## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| BLACK BOX ROYALTIES, INC. and ALBERT MARIA-JANSEN, Individually and as Representative of the Estate of Arthur Lee Conley, <br><br> Plaintiffs, <br><br> v. <br><br> UNIVERSAL MUSIC PUBLISHING, INC., UNIVERSAL MUSIC GROUP, INC., UNIVERSAL MUSIC— MGB NA, LLC (d/b/a Universal Music—MGB Songs), and RONDOR MUSIC INTERNATIONAL, INC., <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | 1:15-CV-04013-ELR |

---

## O R D E R

---

This case comes before the Court on Defendants' Motion to Dismiss for lack of personal jurisdiction and failure to state a claim (Doc. No. 21). The Court's rulings and conclusions are set forth below.

## I.    Background[1]

This case involves royalty payments to the Estate of Arthur Lee Conley, a musician and songwriter known for hit songs like "Sweet Soul Music." During the 1960s, Mr. Conley executed publishing agreements in Georgia for his songs with now defunct East Publications, Inc. ("East Publications") in exchange for royalty payments. Compl. ¶¶ 15–16. These publishing agreements, the subject of this action, dealt with the reproduction and use of Mr. Conley's musical compositions (the "disputed songs"). Id. at ¶ 19. In 1981, Defendant Rondor Music International, Inc. ("Rondor") acquired the interests in the publishing agreements along with the obligation to pay royalties for use of the disputed songs. Id. at ¶ 17. Defendants Universal Music Publishing Inc., Universal Music Group, Inc., and Universal Music—MGB NA, LLC (d/b/a Universal Music—MGB Songs) (collectively "Universal Music") acquired these rights sometime in 2000 through the acquisition of Rondor. Defs.' Mot. to Dismiss at 3–4 (Doc. No. 21).

Mr. Conley relocated to Europe from Georgia around 1970 and lived there until his death in 2003. Compl. ¶ 28. Upon his death, Mr. Conley left his royalty interests in the disputed songs to his partner, Plaintiff Albert Maria-Jansen. Id. at ¶ 29. Defendants failed to pay Mr. Conley or Plaintiff royalties under the publishing

---

[1]    All well-pled allegations are accepted as true and construed in the light most favorable to Plaintiffs as the non-movants for the motion to dismiss before the Court, but do not constitute findings of fact.

agreements between 1999 and 2011, and Plaintiff entered into a Royalty Collection Agreement with Co-Plaintiff Black Box Royalties, Inc. ("Black Box") to assist collecting past-due royalties. Id. ¶¶ 31–33, 36. Black Box demanded an accounting for past-due royalties and that Defendants resume payments; Defendants agreed to both. Id. ¶¶ 37–38. Plaintiffs found the results of this 2011 accounting for past-due royalties "unrealistically low." Id. ¶¶ 40–42.

On November 17, 2015, Plaintiffs filed suit in this Court alleging Breach of Contract, Fraud, Copyright Infringement, and Breach of Good Faith and Fair Dealing, among other claims. Defendants now move to dismiss the case for lack of personal jurisdiction and failure to state a claim.

## II.  Personal Jurisdiction

A plaintiff seeking to exercise personal jurisdiction over a nonresident defendant bears the initial burden of alleging sufficient facts in its complaint to make out a prima facie case of personal jurisdiction over a defendant. Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257–58 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)). "A prima facie case is established if the Plaintiff presents enough evidence to withstand a motion for directed verdict." Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000). A court reviewing a motion to dismiss accepts the allegations as true and derives all plausible inferences in favor of the plaintiff;

3

however, once the defendant submits evidence challenging personal jurisdiction, the plaintiff may not rest on its allegations but must produce evidence supporting jurisdiction. Id. (quoting United Techs. Corp., 556 F.3d at 1274). If both parties produce conflicting evidence regarding jurisdiction, "the court must construe all reasonable inferences in favor of the plaintiff." Diamond Crystal, 593 F.3d at 1257 (quoting Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)).

A federal court undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the Georgia Long-Arm Statute and (2) not violate the due process clause of the Fourteenth Amendment. Diamond Crystal, 593 F.3d at 1257–58. The Eleventh Circuit has explained that in Georgia, the two inquiries are distinct because the Georgia Long-Arm statute imposes obligations independent of procedural due-process requirements. Id. at 1259.

### a. Georgia's Long-Arm Statute

Plaintiffs claim that jurisdiction is proper under O.C.G.A. § 9-10-91(1), part of Georgia's Long-Arm Statute, which provides in relevant part:

> A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:

4

(1) Transacts any business within this state.

Jurisdiction is proper under this sub-section when (1) the defendant purposefully transacts business in the state; (2) the claims arise from those transactions; and (3) exercising jurisdiction does not offend traditional notions of fairness and justice. Drumm Corp. v. Wright, 326 Ga. App. 41, 42 (2014).

### i. Purposefully Transacts Business in Georgia

Defendants argue that they did not purposefully transact business in Georgia because they were not involved in executing the publishing agreements and do not have offices or employees in Georgia.

While the literal language of Georgia's long arm statute requires the actual transaction of business under the first prong—the act or consummation of some transaction by the defendant in the state—a defendant need not physically enter the state. See Diamond Crystal Brands, Inc., 593 F.3d at 1264 ("A nonresident's mail, telephone calls, and other 'intangible' acts, though occurring while the defendant is physically outside of Georgia, must be considered."); Weathers v. Dieniahmar Music, LLC, 337 Ga. App. 816, 820–21 (2016) ("[N]othing in subsection (1) of O.C.G.A. § 9-10-91 requires physical presence or minimizes the import of a nonresident's intangible contacts with the State. To the contrary, Georgia allows the assertion of long-arm jurisdiction over nonresident defendants based on business conducted through postal, telephonic, and Internet contacts."). Therefore,

the Court must examine a nonresident defendant's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted business within Georgia. Diamond Crystal Brands, Inc., 593 F.3d at 1264.

Courts also examine the tangible and intangible conduct of a nonresident's predecessors-in-interest. Georgia courts have held that a business entity that succeeds another by buying its assets, or otherwise taking it over, is subject to long-arm jurisdiction based on its predecessors' actions. See Ney-Copeland & Associates, Inc. v. Tag Poly Bags, Inc., 154 Ga. App. 256, 257 (1980) ("[T]he business meeting held between the prior partnership and the plaintiff, as an action of the prior partnership (giving rise to the claim of jurisdiction), would likewise be attributable to its successor in interest, the newly formed corporation."); see also Dan J. Sheehan Co. v. Fairlawn Jones Condominium Ass'n, Inc., 334 Ga. App. 595, 598 n.12 (2015) (noting that "the acts of the prior partnership could be attributed to the later formed corporation for Long Arm jurisdiction purposes"). Here, Defendants do not dispute that they stepped into the shoes of East Publications as its successor-in-interest.

In a nearly identical case, this Court recently found personal jurisdiction with the same Plaintiffs and disputed songs. Black Box Royalties, Inc. v. Rhino Entm't. Co., No. 1:15-cv-04012-LMM, Doc. No. 31 at 9–13 (N.D. Ga. Nov. 1,

6

2016).[2] In <u>Rhino Entertainment Co.</u>, Judge May found that out-of-state music companies transacted business in Georgia when they entered into contracts with Mr. Conley in Georgia to pay royalties because the defendants' employees "had to travel, or at least have contact with . . . Georgia." <u>Id.</u> at 9. Furthermore, Judge May found that the defendants "had to be present in Georgia or send mail to Georgia" to sign the agreements, and the defendants paid royalties to Mr. Conley in Georgia under the contracts. <u>Id.</u>

Here, as in <u>Rhino Entertainment Co.</u>, Plaintiffs allege that the publishing agreements were negotiated and executed in Georgia and that royalties were paid to Mr. Conley in Georgia. Laurie Decl. ¶ 6 (Doc. No. 29-1). To negotiate the publication agreements, East Publications' employees had to travel or at least have contact with Georgia to negotiate terms. To execute and sign the publication agreements, East Publications' employees had to be present in, or send mail to, Georgia. Finally, in performing under the publication agreements, East Publications also sent royalties to Mr. Conley in Georgia until his relocation to Europe in the 1970s. Accordingly, the Court finds that Defendants transacted business in the state.

---

[2]    Plaintiffs filed this suit on the same day. The case before Judge May involves the sound recordings of Mr. Conley's performances as opposed to his musical compositions.

### ii. Arising from those Transactions

Defendants argue that Plaintiffs' claims do not arise from the publishing agreements executed in Georgia, but from their alleged failure to pay royalties after Mr. Conley left Georgia. The Court disagrees. The claims here arise from the publishing agreements, not the purported breach: "Defendants alleged duty to pay [Plaintiffs] arises from the original [publishing agreements], made and entered into in Georgia. Therefore, Plaintiffs' claims do arise from Defendants' business transaction in Georgia." Rhino Entm't Co., Order at 11. The publishing agreements create the obligation to pay royalties and are part and parcel of Plaintiffs' claims. Thus, the Court finds that Plaintiffs' claims arise from the publishing agreements.

### iii. Traditional Notions of Fairness and Justice

Third, O.C.G.A. § 9-10-91(1) requires the exercise of jurisdiction be reasonable to "ensure that it does not result solely from random, fortuitous, or attenuated contacts." Drumm, 326 Ga. App. at 43. To test the reasonableness of jurisdiction, courts looks to "(a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate justice system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several States in furthering fundamental substantive social policies." RMS Titanic, Inc. v. Zaller,

8

978 F. Supp. 2d 1275, 1301 (N.D. Ga. 2013) (quoting <u>Meier ex rel. Meier</u>, 288 F.3d at 1274).

Here, the Court first finds little burden on Defendants, who are international music corporations, because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." <u>McGee v. Int'l Life Ins. Co.</u>, 355 U.S. 220, 223 (1957). Second, the Court finds that the state has an interest in adjudicating this dispute because the publishing contracts were executed in Georgia with a resident. <u>See First Nat. Bank of Ames, Iowa v. Innovative Clinical & Consulting Servs., LLC</u>, 280 Ga. App. 337, 338 (2006) ("Georgia has an interest . . . in providing its own citizens with a convenient forum for redressing injuries wrought by nonresidents who have sought the state's citizens out for the purpose of business gain."). Third, jurisdiction would aid the efficient resolution of this controversy because Judge May's companion case involves similar parties, disputed songs, legal issues, and the same counsel. In sum, the Court finds the exercise of jurisdiction reasonable and personal jurisdiction proper under O.C.G.A. § 9-10-91(1).[3]

### b. Constitutional Requirements of Due Process

In addition to satisfying the Georgia Long-Arm Statute, the exercise of personal jurisdiction must also comport with constitutional due process under the

---

[3]      Since the Court finds personal jurisdiction proper under O.C.G.A § 9-10-91(1), it does not reach whether jurisdiction is proper under other provisions of the Georgia Long Arm Statute.

Fourteenth Amendment. The heart of constitutional due process is fair warning—"that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Plaintiffs concede at the outset that if Defendants are subject to personal jurisdiction, it is specific and not general jurisdiction. In specific jurisdiction cases, the fair warning requirement is satisfied if the defendant has "purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp., 471 U.S. at 472–73. Once this showing is made, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Diamond Crystal Brands, Inc., 593 F.3d at 1267 (quoting Burger King Corp., 471 U.S. at 477).

Defendants do not dispute that, through their acquisition of East Publications and the publication agreements, they stepped into the shoes of East Publications and are a party to the agreements with Mr. Conley. Rather, Defendants argue that their conduct cannot satisfy specific jurisdiction because they did not purposefully direct any activities to Georgia. Defs.' Mot. for Summ. J. at 13 (Doc. No. 21-1). Even if

Universal Music never directed activities at Georgia, however, predecessor-in-interest East Publications did.

Federal courts recognize that "the jurisdictional contacts of a predecessor corporation may be imputed to its successor without offending due process." Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 783 (7th Cir. 2003) (citing Patin v. Thoroughbred Power Boats, Inc., 294 F.3d 640, 654 (5th Cir. 2002)); see also Sculptchair Inc. v. Century Arts, Ltd., 94 F.3d 623, 630 (11th Cir. 1996) (holding that the jurisdictional contacts of a "predecessor corporation" could be imputed to a "corporate successor" under Florida law). The jurisdictional contacts of the former are the contacts of the latter for purposes of due process because the two corporations are the same entity. Purdue Research Found., 338 F.3d at 783. However, when a corporation is merely assigned contracts rights, the "assignee does not step automatically into the shoes of the assignor for purposes of personal jurisdiction." Id. at 784. Because Defendants do not dispute that they are the successor-in-interest and were not merely assigned contract rights, the Court finds that the jurisdictional contacts of predecessor East Publications may be imputed to Defendants.

As to the jurisdictional contacts of East Publications, the Supreme Court has emphasized that contracts with an out-of-state defendant alone, such as the publication agreements here, are not automatically sufficient for jurisdiction. Burger

King Corp., 471 U.S. at 478. Rather, the existence of a contract, along with other factors—such as "prior negotiations, and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing"—must also be evaluated. Id. at 479.

Here, the Court finds that East Publications' contracts, along with other factors, are sufficient for jurisdiction. As noted in the Court's Long-Arm analysis, East Publications' employees had to travel to, or at least have contact with, Georgia to negotiate terms of the publication agreements with Mr. Conley. East Publications' employees had to be present in, or send mail to, the state to sign and execute the final agreements. And finally, East Publications sent royalties to Mr. Conley in Georgia until his move to Europe in the 1970s. This litigation also arises from these contacts because the publication agreements form the basis of Defendants' obligation to pay royalties.

Finally, the Court looks to see if Defendants have made a "compelling case" that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. Diamond Crystal Brands, Inc., 593 F.3d at 1267 (quoting Burger King Corp., 471 U.S. at 477). "Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp., 471 U.S. at 477. Courts look

12

to the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiffs' interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. World Wide Volkswagen Corp., 444 U.S. at 292.

For similar reasons as outlined in the Court's Long-Arm analysis, the Court finds that jurisdiction would not violate traditional notions of fair play and substantial justice. Defendants argue that there is a burden to litigate here and that California has a greater interest as the forum where Defendants' headquarters is located. The Court does not agree that the inconvenience to an international corporation in litigating outside of its home state presents a compelling case that jurisdiction is unreasonable. If anything, the fact that the publication agreements were negotiated, executed, and performed in Georgia for the benefit of a resident, presents a compelling case that jurisdiction is proper. Accordingly, the Court finds that personal jurisdiction comports with due process.

## III. Venue

Since personal jurisdiction is proper, the Court now looks to venue. Venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Defendants do not

necessarily argue that venue is improper in the Northern District of Georgia, but rather, reassert the same personal jurisdiction arguments to say that that venue is improper in Georgia generally. However, the Court has already found that Plaintiffs' claims arise from the publishing agreements that were executed in Georgia. Accordingly, venue is proper in Georgia under § 1391(b)(2). Since the Court finds both personal jurisdiction and venue proper, the Court turns to Defendants' arguments that Plaintiffs failed to state a claim.

## IV.    Failure to State a Claim

Under the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This pleading standard does not require "detailed factual allegations," but "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Id. At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are

14

construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). This principle does not, however, apply to legal conclusions in the complaint. Iqbal, 556 U.S. at 678.

In the complaint, Plaintiffs bring claims for (1) Copyright Infringement, (2) Breach of Contract, (3) Accounting, (4) Deposit of Funds, and (5) Breach of the Covenant of Good Faith and Fair Dealing. Defendants have moved to dismiss each for different reasons. The Court addresses each claim in turn.

### a. Copyright Infringement Claims and the Statute of Limitations

Plaintiffs allege that Defendants committed copyright infringement as to the disputed songs by copying, distributing, and otherwise profiting from them without permission. Compl. ¶¶ 65–74. Defendants argue that Plaintiffs' copyright claims are barred by the statute of limitations. See La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (holding that a copyright infringement claim must be dismissed if the claim is time barred).The parties agree that a three-year statute of limitations applies to copyright claims. See 17 U.S.C. § 507(b).

This three-year statute of limitations begins to run when the plaintiff knows, or in the exercise of reasonable diligence should know, of the infringement. Lott-Johnson v. Estate of Goreau, No. 1:14-cv-03104-WSD, 2015 WL 4389979, at *3 (N.D. Ga. July 15, 2015) (citing Calhoun v. Lilenas Publ'g, 298 L.3d 1228, 1236 (11th Cir. 2002) (Birch, J., specially concurring)).

Here, Plaintiffs should have known of the infringement in 2000 and, at a minimum, in 2011. Both dates are well outside the three-year statute of limitations. In 2000, Rondor's acquisition of Mr. Conley's disputed songs was publicly recorded in the U.S. Copyright Office. Rumfelt Decl. Ex. A (Doc. No. 21-4). This Court has held that a plaintiff should know of infringement when a defendant registers a copyright with the U.S. Copyright Office. Master Mind Music, Inc. v. Block Enterprises, LLC, No. 1:12-cv-162-RWS, 2012 WL 6625754, at *9 (N.D. Ga. Dec. 18, 2012). Even so, Plaintiffs had actual knowledge of the alleged infringement in 2011, four years prior to the filing of this suit on November 17, 2015. In 2011, Defendants provided a full accounting of past-due royalties on the disputed songs. In that accounting, Defendants provided over 500 pages to Plaintiffs showing that Universal Music was exercising ownership over Mr. Conley's compositions.

Plaintiffs argue that their copyright claims are not barred for the three years prior to this suit under the "separate-accrual rule." Under the separate-accrual rule, each time an infringing work is reproduced or distributed the infringer commits a new wrong and the "statute of limitations runs separately from each violation." Petrella v. Metro–Goldwyn–Mayer, Inc., 134 S. Ct. 1962, 1969 (2014). The separate-accrual rule does not apply, however, when the gravamen of the claims involve copyright ownership, not infringement. "Where the gravamen of a copyright infringement suit is ownership, and a freestanding ownership claim would be time-

barred, any infringement claims are also barred." <u>Lott-Johnson</u>, 2015 WL 4389979, at *3 (quoting <u>Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC</u>, 733 F.3d 1251, 1255 (9th Cir. 2013)). A plaintiff cannot avoid a statute of limitations defense "by portraying an action as one for infringement when copyright ownership rights are the true matter at issue." <u>Id.</u> (quoting <u>Kwan v. Schlein</u>, 634 F.3d 244, 229 (2d Cir. 2011)). In a typical copyright infringement case, where ownership is not the gravamen of the claim, ownership is not an issue because the dispute is "based on whether copying infringed on a plaintiff's rights or whether the materials taken were original." <u>Id.</u>

Here, the gravamen of Plaintiffs' copyright claims are ownership because Plaintiffs assert that Defendants have no right to copy, sell, distribute, or license any of the disputed songs. Compl. ¶¶ 66–68. In other words, Plaintiffs claim that Defendants do not own the disputed songs. Defendants argue that they do in fact own the copyrights over the disputed songs, evidenced by their submission of records from the U.S. Copyright Office. Rumfelt Decl. Ex. A (Doc. No. 21-4). Since the parties dispute who owns the compositions, not whether there was infringement, the gravamen of the dispute is copyright ownership. Therefore, the separate-accrual rule does not apply. For these reasons, the Court finds that Plaintiffs' claims for copyright infringement are barred by the statute of limitations and dismisses those claims.

### b. Breach of Contract Claims and Statute of Limitations

The parties first dispute whether Georgia or California law applies to the breach of contract claims. Although Defendants rely on California law in their briefs, they offer no argument as to why California law should apply, and the publishing agreements themselves contain no choice of law provision.

Nevertheless, in determining whether Georgia or California law governs this contract dispute, a "federal district court sitting in diversity must apply the choice of law rules of the forum state." Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996). Georgia, the forum state here, applies the traditional choice-of-law rules for contract—*lex loci contractus*. Convergys Corp. v. Keener, 276 Ga. 808, 812 (2003). "Under the rule of lex loci contractus, the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made, except that where the contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is to be performed will apply." Fed. Ins. Co. v. Nat'l Distrib. Co., 203 Ga. App. 763, 765 (1992).

Here, the parties made the contracts in Georgia, and they were performed for years in Georgia, evidenced by royalty payments to Mr. Conley in the state until his relocation to Europe. Laurie Decl. ¶¶ 6–7. Accordingly, the Court finds that Georgia law applies to the publishing agreements in question.

Under Georgia law, the statute of limitations for breach of a written contract is six years. O.C.G.A. § 9-3-24. Plaintiffs allege that Defendants (1) breached the written publication agreements requiring royalty payments twice a year, and (2) breached a separate agreement to conduct a full accounting for all past-due royalties. Compl. ¶¶ 47, 50.

"When the statute of limitations begins running on a breach of contract claim depends on whether the agreement is entire or divisible." Baker v. Brannen/Goddard Co., 274 Ga. 745, 748 (2002). When the agreement is for a "single sum certain" due at a definite date, the agreement is entire and the statute of limitations begins running when a party fails to pay under the contract. Id. When the agreement requires ongoing payments, it is divisible, and the statute of limitations begins running each time a party fails to make a payment due under the contract. Id. In such an agreement, "the breaches occur at successive periods . . . and an action will lie for each breach, but all the breaches occurring up to the commencement of the action must be included therein." Id. (quoting O.C.G.A. § 13-6-14). For either divisible or sum-certain contracts, the statute of limitations begins running "on the date that suit on the claim can first be brought." Hoffman v. Ins. Co. of N.A., 241 Ga. 328, 329 (1978).

In regard to Plaintiffs' breach of contract claim for failure to pay royalties under the publishing agreements, Defendants had to pay royalties twice a year based

off Defendants' use of the disputed songs, not a single sum certain. Accordingly, the publishing agreements are divisible contracts from which the statute of limitations begins running from each time that Defendants failed to pay royalties between 1999 and 2015. Since this suit was filed in November 2015, Plaintiffs' breach of contract claims for failure to pay royalties from November 2009 on are not time barred by the six-year statute of limitations.

In regard to Plaintiffs' breach of contract claim for failure to conduct a proper accounting, "[a] written acknowledgment of an existing liability is equivalent of a new promise to pay and constitutes a new point from which the statute of limitation begins to run." Langford v. First Nat. Bank of Atlanta, 122 Ga. App. 210, 211 (1970); see also Cleveland Lumber Co. v. Proctor & Schwartz, Inc., 397 F. Supp. 1088, 1093 (N.D. Ga. 1975). Here, Plaintiffs allege that Defendants breached their agreement to conduct a proper accounting in 2011 of all past-due royalties. Viewing the allegations in the light most favorable to Plaintiffs, the Court finds that Defendants' 2011 accounting could be a written acknowledgement of existing liabilities to pay all past-due royalties. Accordingly, the Court finds that the remainder of Plaintiffs' breach of contract claims, those prior to November 2009, are not time barred.

### c. Equitable Accounting Claim

In addition to Defendants' 2011 accounting, Plaintiffs now seek another accounting of Defendants' books and records as they relate to the disputed songs and royalty payments. Compl. ¶ 54. A party may seek an equitable accounting under Georgia law in "[c]ases where accounts are complicated and intricate." O.C.G.A. § 23-2-70. This Court has held that an "accounting is generally unnecessary in a breach of contract action where a party may utilize the discovery process, and where necessary, orders of the court to enforce compliance with discovery obligations to determine the full amounts owed under the contract." nVision Global Tech. Solutions, Inc. v. Cardinal Health 5, LLC, 887 F. Supp. 2d 1240, 1276 (N.D. Ga. 2012) (collecting Georgia cases). Here, there is no evidence that the accounts at issue are complicated or intricate, or that Plaintiffs could not determine the full amount owed through discovery. Accordingly, the Court dismisses Plaintiffs' accounting claim.

### d. Fraud Claims

Defendants argue that Plaintiffs' fraud claims should be dismissed for failure to comply with heightened pleading standards. A complaint alleging fraud must "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Under Rule 9(b), a plaintiff "must allege (1) the

21

precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380–81 (11th Cir. 1997). In other words, "to avoid dismissal, a complaint alleging fraud must plead the 'who, what, when, where and how' of the alleged fraud." Graham v. Mortg. Elec. Registration Sys. Inc., No. 2:11–CV–00253–RWS, 2012 WL 527665, at *3 (N.D. Ga. Feb. 17, 2012).

Here, the complaint alleges fraud merely because Defendants deliberately failed to pay proper royalties or issue royalty statements. Compl. ¶¶ 57–60. The complaint fails to allege, with any specificity, the statements, documents, or misrepresentations made by Defendants. Similarly, Plaintiffs do not allege the content or manner in which purported statements misled Plaintiffs, or the time, place, or people responsible for such statements. Accordingly, the Court finds that Plaintiffs fail to state a claim for fraud, and the Court dismisses those claims.

**e. Deposit of Funds Claim**

Defendants argue that Plaintiffs' claim for a Deposit of Funds in the Court under Fed. R. Civ. P. 67 is improper. Rule 67 provides that "[i]f any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of

court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it." The Rule does not provide an independent cause of action. "The 'core purpose' of the rule is to relieve a party who holds a contested fund from responsibility for disbursement of that fund among those claiming some entitlement thereto." Zelaya/Capital Int'l Judgment, LLC v. Zelaya, 769 F.3d 1296, 1302 (11th Cir. 2014). Accordingly, the Court dismisses Plaintiffs' claim for a Deposit of Funds as improper.

### f.  Breach of the Covenant of Good Faith and Fair Dealing Claims

Plaintiffs bring claims for Defendants' Breach of the Covenant of Good Faith and Fair Dealing because such a covenant is implied in "every contract." Compl. ¶ 83. These alleged breaches, however, are not independent causes of action and fall within Plaintiffs' Breach of Contract claims. See McGee v. Patterson, 323 Ga. App. 103, 112 (2013) (holding that every contract implied a covenant of good faith and fair dealing but that those covenants cannot "be breached apart from the contract provisions it modified and therefore cannot provide an independent basis for liability"). Since Breaches of the Covenant of Good Faith and Fair Dealing cannot provide an independent basis for liability and are duplicative of the Breach of Contract claims, the Court dismisses them.

## V.    Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss (Doc. No. 21) and **LIFTS** the stay on this action. The Court denies Defendants' motion as to Personal Jurisdiction, Venue, and Plaintiffs' Breach of Contract Claims. The Court grants Defendants' motion as to Plaintiffs' claims for Copyright Infringement, Equitable Accounting, Fraud, Deposit of Funds, and Breach of the Covenant of Good Faith and Fair Dealing.

**SO ORDERED**, this 21st day of February, 2017.

Eleanor L. Ross
United States District Judge
Northern District of Georgia